IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      v.

EDMUND J. BRIXEN,

           Defendant.

Case No.: 17-cr-00065-wmc

GOVERNMENT'S SENTENCING MEMORANDUM

I.     Introduction

     Edmund Brixen is a sexual predator. He has been preying on children since he was a teenager. Despite two prior convictions for behavior that involved the sexual assault of children, and his status as a registered sex offender, Brixen remained undeterred, producing explicit images of two different minor females. For this, he was charged with, and has been convicted of producing child pornography. Moreover, the evidence that led to the charges in the indictment was obtained when Brixen showed up to meet someone he thought was yet another 14-year-old girl.

     While the defendant's guideline range for his offense is straight life, the maximum sentence for the count of conviction is thirty years. For the reasons below, this Court should sentence the defendant to thirty years in prison to be followed by a lifetime period of supervised release.

II.     Sentencing Argument

Sentencing in Federal Courts is guided by 18 U.S.C. § 3553.  Section 3553 directs this Court to focus on who the defendant is and what the defendant did (Section 3553(a)(1)), and to address various societal goals in sentencing (Section 3553 (a)(2-7)).  A brief analysis of each of these components supports a sentence of thirty years in prison.

    A.     Nature and Circumstances of the Offense

18 U.S.C. § 3553(a)(1) directs the Court to consider the nature and circumstances of the offense – what did the defendant do?  The defendant's actions support a sentence of thirty years.

On May 24, 2017, the defendant used the Whisper App to make contact with an undercover officer posing as a 14-year old girl.  (PSR ¶ 15).  Within a very short time of their initial contact, Brixen asked for a picture, offered to take "her" "shopping for bras n panties and maybe a movie n treats."  (Id.)  The defendant knew "she" was 14.  (Id.).

By May 31, the defendant was calling the undercover persona "sweetie" and said he had no issues with their age difference, was "here to be [her] man," and "would love to have a chance with [her] to love [her] n take care of [her]."  (Id., ¶ 16).  When they were preparing to meet, the defendant told "her" to wear "something sexy lol."  (Id., ¶ 17).

On June 1, 2017, the defendant and the undercover persona agreed to meet at a Woodman's parking lot.  Thankfully, it was law enforcement, and not a real 14-year-old girl, who showed up for the meeting.  At that time, law enforcement seized Brixen's phone and subsequently searched it and other devices that belonged to Brixen.

2

Law enforcement analyzed the defendant's electronics and found evidence of the crimes charged in the indictment.

      1.    KV #1

Sometime in late December 2016 or early January 2017, the defendant "met" 14-year old KV #1 on Whisper. (PSR. ¶ 40). The next day they began communicating on Snapchat. (Id.). KV #1 told Brixen she was 14, but he did not want to talk about her age. (Id., ¶ 41). Brixen sent her pictures of his penis and asked her for nude pictures of her breasts. (Id.). They also communicated by live video chats, sometimes naked. (Id., ¶ 43).

The first time the defendant met KV #1 in person, he traveled to her home in Minnesota and picked her up. (PSR, ¶ 43). They went to a park where the defendant pressured KV #1 to perform oral sex on him. (Id.). KV #1 and the defendant met in Minnesota two other times. Both times she performed oral sex on the defendant (Id., ¶¶ 42, 43). Both times he touched her breasts and her vagina, at least once against her will. (Id.).

On January 27, 2017, the defendant picked KV #1 up from her home in Minnesota and took her to his home in Siren for the weekend. While there, she performed oral sex on him "a lot" and he performed oral sex on her approximately five times. (PSR, ¶ 46).

Additionally, the defendant took numerous pictures of the KV #1 that weekend. The pictures included close-up pictures of KV #1's naked vagina, pictures of KV #1's naked breasts, and pictures of KV #1's naked buttocks. (PSR ¶ 33). Law enforcement

3

found all these pictures on the defendant's phone (Id., ¶¶ 33, 55), along with numerous other naked pictures and videos of KV #1 that she took at her home and sent to the defendant. (Id., ¶ 35).

It appears KV #1 cut of contact with the defendant at the beginning of May. (PSR, ¶ 29). At that point, the defendant changed the victim's Snapchat contact name in his phone to "Fucking FAKE ASS CUNT BITCH."

    2.    KV #2

His "relationship" with KV #1 over, Brixen began looking for his next victim. On May 18, 2017, the defendant made contact with KV #2 on Whisper. KV #2's Whisper profile age showed she was 15. (PSR, ¶ 26). The next day, when Brixen asked KV #2 if she wanted to hang out, she responded she was in school, (Id.), another indication of her age.

On May 20, the defendant asked KV #2 if she could spend the weekend at his place sometime. (PSR, ¶ 26). The conversation between the defendant and KV #2 indicates his plans for the weekend.[1] And we know the conversation is not just "fantasy talk" based on Brixen's repeatedly sexually assaulting KV #1 when she visited him for a weekend.

While KV #2 never met the defendant in person, he sent her close up images of an erect penis. (PSR ¶ 26). The defendant then asked KV #2 to send a "close up of [her] pussy." KV #2 did as she was asked and also sent pictures of her naked breasts when

---

[1] "U like to get eaten out?" "Could I do that to u?" "Would u let me make love to u? "Really? Cuz I would ravish u and fuck u til u cummed over and over . . .". (PSR, ¶ 26).

4

he asked her to do that. (Id.). Law enforcement found these images on the defendant's phone. (Id., ¶ 34).

B. History and Characteristics of the Defendant

The defendant's predatory behavior began in 1999 when the defendant was just fourteen years old and was convicted for repeated sexual assault of the same child. (PSR, ¶ 90). The defendant's brother reported the offense involved the defendant forcing a foster child in the defendant's home to perform oral sex on him. (Id.). A child that was placed in foster care, presumably to be kept safe, was instead assaulted by the defendant.

In 2004, when the defendant was 19, he was convicted of third degree sexual assault. This time the victim was a 15-year old developmentally disabled girl. The defendant admitted that he would sit behind the victim on a school bus and fondle the victim's breasts and her vagina. (PSR, ¶ 92).

Tellingly, the defendant refused to sign a release of information that would have allowed the Court to evaluate his adjustment to supervision. (Id.). However, records the probation office was able to get through another source show the defendant had contact with children of all ages throughout his extended supervision, resulting in numerous revocations. (Id.).

Despite the court ordering Brixen not to have contact with minors, the defendant was seen pushing a small child in a stroller. More alarming, he also brought an 11-year-old developmentally disabled girl candy and had ice cream with her on a different day. (PSR, ¶ 92). So while the defendant was on supervision for sexually assaulting a 15-year

5

old developmentally year old, he began what appears to be sexually grooming this 11-year old.

Following this conduct, Brixen was offered the opportunity attend sex offender treatment as an alternative to revocation. Four weeks into an 11-week program, the defendant was kicked out for making sexual comments about the staff members, including saying he wanted to "tie up" a female staff person. (Id.). Following this behavior he was sent back to prison for approximately fourteen months. (Id.).

After he was released from this term of imprisonment, Brixen was placed on supervision again. A June 29, 2009, revocation summary indicates the defendant had unapproved contact with minors four times. This included contact with a 16-year old at her home, and at a park, where the defendant approached the girl and her friend. (Id.). He also had contact with a 12-year old who told authorities she and the defendant were "playing around, shoving each other, and kind of wrestling." (Id.) In other words, Brixen once again had his hands on an underage girl. And these were just the times he was caught.

When questioned about some of these activities, he admitted he knew he was not to have contact with anyone under age eighteen. (Id.). So despite being ordered many times not to have contact with children, and despite being revoked and sent to jail when he did so, the defendant just could not stop himself.

While the defendant's life started out less than ideal, he was placed into a loving foster home by age 2 ½. He was adopted by his foster parents at age six and said he

could not have asked for a better family. (PSR, ¶ 109). The defendant suffered no physical, mental, or sexual abuse while growing up. (Id.).

The defendant re-entered foster care at age fourteen. While the defendant reports it was because he was uncontrollable, it seems more likely a result of him sexually assaulting another child in the home, as reported by the defendant's brother, Matthew Brixen. (PSR. ¶ 123). Matthew also described the defendant's inappropriate sexual conduct and abusive behavior with the family pets. (Id., ¶ 122).

Matthew was not the only family member who reported inappropriate sexual conduct by the defendant. The defendant's sister described acts directed at her and another sister that were "red flags" and reported that her sister-in-law had to stop the defendant's behavior on one occasion. (Id., ¶ 119). The sister believes Brixen should be in prison "for as long as possible because he will victimize someone else." (Id., ¶ 120). A third sibling echoed that very same thought. (Id., ¶ 117).

Brixen's history, combined with the present offense, speaks to his character. He is opportunistic and brazen in his attempts to meet and sexually assault teenage girls. His acts include sexually assaulting a developmentally disabled teenager on a school bus, approaching minors in public places, reaching out to unknown minors on the internet, traveling across state lines to meet up with a minor, and meeting someone he thought was a young girl in a grocery store parking lot. By continuing to have contact with minors, even when ordered not to, Brixen has demonstrated repeatedly that he is a danger to the community whenever he is not confined.

Title 18, United States Code, Section 3553 directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in the subsection." Included in those factors are the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, and to protect the public from further crimes of the defendant.

A sentence of thirty years, which is below the guidelines, is just punishment and reflects the seriousness of the offense. More importantly, a thirty-year sentence, the statutory maximum for the offense of conviction, means that the public will be protected from the defendant for as long as possible.

III.   Conclusion

Edmund Brixen is a registered sex offender who remains undeterred from sexually assaulting teenage girls. He faces an advisory guideline range of life in prison. The government respectfully requests that the Court impose a sentence as close to that as it can, that is the 30-year statutory maximum.

Dated:  March 2, 2018

                Respectfully submitted,

                SCOTT C. BLADER
                United States Attorney

By:       /s/
                ELIZABETH ALTMAN
                Assistant United States Attorney