UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

      Plaintiff,

 -vs-                                    Case No. 17-CR-65-WMC

EDMUND J. BRIXEN,                           Madison, Wisconsin
                                            March 7, 2018
      Defendant.                    1:09 p.m.

_____

STENOGRAPHIC TRANSCRIPT OF SENTENCING
HELD BEFORE U.S. DISTRICT JUDGE WILLIAM M. CONLEY

APPEARANCES:

For the Plaintiff:

                Office of the United States Attorney
                BY:   ELIZABETH ALTMAN
                Assistant United States Attorney
                222 West Washington Avenue, Suite 700
                Madison, Wisconsin  53703

For the Defendant:

                Federal Defender Services of Wisconsin
                BY:   PETER R. MOYERS
                22 East Mifflin Street, Suite 1000
                Madison, Wisconsin  53703

Also appearing:   EDMUND J. BRIXEN, Defendant
                  RICHARD WILLIAMS, U.S. Probation Officer

Jennifer L. Dobbratz, RMR, CRR, CRC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 410
Madison, Wisconsin  53703
(608) 261-5709

1          (Proceedings called to order at 1:09 p.m.)

2          THE CLERK:  Case No. 17-CR-65, the *United States of*

3   *America v. Edmund J. Brixen,* called for sentencing.

4      May we have the appearances, please.

5          MS. ALTMAN:  Good afternoon, Your Honor.  The United

6   States appears by Elizabeth Altman.

7          MR. MOYERS:  Peters Moyers from Federal Defender

8   Services, and seated here to my left is Mr. Brixen.

9          THE COURT:  Good afternoon, all.

10      We are here for the sentencing of Edmund Brixen.  My first

11   obligation, Mr. Brixen, is to confirm that you've had an

12   opportunity to read and discuss the presentence report and the

13   addendum to that report with your counsel, Mr. Moyers.

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  The second is to ask the government to

16   confirm its motion for additional one-level reduction for

17   acceptance of responsibility.

18          MS. ALTMAN:  Yes, Your Honor.

19          THE COURT:  And also I just want to confirm that the

20   government is withdrawing its objection to the offense level

21   calculation based on a theory of a predicate offense.

22          MS. ALTMAN:  Yes.

23          THE COURT:  Are there any victims or someone here to

24   speak for the victims?

25          MS. ALTMAN:  No, Your Honor.  We have been in contact

1    with the victim's family, and they have opted to have our

2    victim/witness coordinator be here and inform them of what

3    happens.

4            THE COURT:  Very good.  And at this point do you

5    anticipate them requesting any restitution?

6            MS. ALTMAN:  They have not indicated that, Your Honor.

7            THE COURT:  All right.  Based on those preliminaries

8    then, I will accept the plea agreement, finding that the offense

9    of conviction adequately reflects the defendant's criminal

10   conduct and the plea agreement does not undermine the statutory

11   purposes of sentencing.  In determining the defendant's

12   sentence, I will take into consideration the advisory sentencing

13   guidelines, and the statutory purposes of sentencing at Section

14   3553(a) of Title 18 will control.

15       As to the guidelines, the defendant objected to the use of

16   his conviction for violating Section 948.025(1) as a predicate

17   offense that increases the mandatory minimum and maximum

18   sentences under Section 2251(e) of Title 18.  The Court agrees

19   that this is not a predicate offense, as now by withdrawal of

20   the objection does the government, but for somewhat of a

21   different reason than argued by the defendant.  A violation of

22   Section 948.025(1) is a divisible statute, and it arises out of

23   a violation of 948.02(1) for first-degree sexual assault or for

24   a violation under Section 948.02(2) for second-degree sexual

25   assault.

1      The Seventh Circuit addresses the issue of the age mismatch

2   in *U.S. v. Geasland* with respect to first-degree sexual assault.

3   However, in this case there is no documentation that would

4   confirm the defendant committed first-degree sexual assault

5   similar to that in *Geasland*.  Therefore, based on the elements

6   required for second-degree sexual assault, the offense may not

7   meet the definition of abusive sexual contact under Section 2244

8   of Title 18.  Specifically, the age of the defendant and the

9   victim at the time of the offense mean the penalties and

10  guideline calculations outlined in the revised presentence

11  report are correct.

12      Accordingly, I find that the probation office has

13  calculated the guidelines correctly as set forth in the revised

14  presentence report using the current guidelines manual.  The

15  calculations do take into account all relevant conduct under

16  Section 1B1.3.

17      Under grouping rules, the defendant pled guilty to

18  production of child pornography in Count 2 of the indictment and

19  stipulated to the conduct in the remaining counts of the

20  indictment.  Conduct for Count 2 as covered by Section 2G2.1 of

21  the guidelines is typically not groupable under Section 3D1.2.

22  However, Counts 1, 2, 3, and 5 were grouped under Group A

23  because they involve the same victim, KV No. 1, and the images

24  charged were created during the same incident rather than a

25  separate occasion or separate harm.  Count 5 involves possession

1    of child pornography that included the images also depicting

2    KV No. 1, and possession of child pornography is a groupable

3    offense.  Count 4 is a separate group offense -- we'll call it

4    Group B, as in boy -- because the conduct involves a separate

5    victim, KV No. 2.  Total offense level is determined under the

6    multiple-count rule.

7         Under Group A, the guideline for knowingly and

8    intentionally using a minor to produce sexually explicit visual

9    depictions in violation of Section 2251(a) of Title 18 is found

10   at Section 2G2.1.  The defendant caused KV No. 1 to engage in

11   sexually explicit conduct.  Therefore, the base offense level is

12   32 under subsection 2.1(a).

13        A two-level increase is warranted because KV No. 1 had not

14   yet attained the age of 16 years of age.

15        A two-level increase is warranted because the defendant

16   engaged in a sexual act with KV No. 1.

17        Two levels are also added because the defendant used a

18   computer or cell phone to persuade the defendant to engage in

19   sexually explicit conduct and to facilitate the travel of KV No.

20   1 to engage in sexual conduct as contemplated in subsection

21   2.1(b)(6)(B).  This leaves him with an adjusted offense level

22   for Group A of 38.

23        Under Group B, the guideline for offenses under Section

24   2251(a) are found at Section 2G2.1 as well.  The defendant

25   caused KV No. 2 to engage in sexually explicit conduct

1    justifying a base offense level of 32, and two levels are added

2    again because of the use of a computer or cell phone to persuade

3    the defendant to engage in sexually explicit conduct.  That

4    leaves him with an adjusted offense level under Group B of 34.

5         Under the provisions of Section 3D1.2, one unit is assigned

6    to Group A because it is the group with the highest adjusted

7    offense level, and an additional unit is assigned to Group B

8    because it is within four levels of Group A.  Those two units

9    result in a two-level offense level increase.  Therefore, the

10   defendant's combined offense level is 40.

11        Additionally, because the offense of conviction is a

12   covered sex crime but since neither Sections 4B1.1 as a career

13   offender nor subsection (a) of Section 4B1.5 applies, the

14   defendant engaged in a pattern of activity involving prohibited

15   sexual conduct and is a repeat and dangerous sex offender

16   against minors.  The offense level results in 5 plus the offense

17   level determined under Chapters 2B -- Chapters Two and Three.

18   In this case then, his applicable offense level is 45 under

19   Section 4B1.5(b)(1).

20        While the defendant qualifies for a three-level downward

21   adjustment under Section 3E1.1 because he pled guilty

22   demonstrating acceptance of responsibility and because of the

23   government's motion for an additional one-level reduction, he

24   still has an offense level of 42 and a criminal history category

25   of IV, meaning that ordinarily he would have an advisory

1     guideline imprisonment range of 360 months to life.  However,

2     the statutory maximum penalty in the present case is 30 years.

3     Therefore, the advisory guideline imprisonment range is 360

4     months.

5          That is obviously a lot of time and a very specific

6     sentence as dictated -- or advised, I should say, by the

7     guidelines.  I am unable to say, given the severity of the

8     defendant's conduct and his impact on now multiple victims, that

9     it is not within the realm of reason, and, in fact, the

10    government makes a good argument for a sentence of that level.

11    The only mitigating fact I can really find is that -- is the one

12    pointed out in defense counsel's memorandum, which is that until

13    now his longest sentence has been two years, and perhaps there

14    is reason to hope that with proper training and treatment, the

15    defendant will find some way to overcome what is clearly a

16    disturbing history of sexual abuse repeatedly of minor girls,

17    but that hope is offset by the very real risk the defendant

18    represents to that group of the public at this time and by the

19    fact that earlier efforts have proved fruitless with this

20    defendant.

21         So I am inclined to think that a substantial sentence, if

22    not at 30 years at a very substantial level, is justified, but I

23    have not decided on an appropriate sentence, and I'd be happy to

24    hear any additional comments by counsel, understanding that I

25    have read not only the presentence report but with some care

1    their written submissions, and, of course, I want to hear from

2    the defendant.

3        So we'll begin with the government.  Ms. Altman.

4        MS. ALTMAN:  Thank you, Your Honor.  I will be very

5    brief.  I do want to correct one thing in my sentencing

6    memorandum, and that is in the second paragraph I indicated that

7    his guideline range is straight life, and, of course, as the

8    Court just noted, that's incorrect, but it does not change the

9    government's recommendation at all.

10       The only thing I would like to do at this point is comment

11   on a couple things in the defendant's sentencing memorandum, two

12   things the Court has already touched on.  While it's true that

13   he has only spent about five years combined in jail or prison,

14   what he has shown is that it doesn't deter him.  He knows the

15   consequences when he's on supervision.  If he violates, he's

16   going back to custody and --

17       THE COURT:  The only argument here being that this will

18   be the first time that the book is figuratively thrown at him,

19   and perhaps this will have some greater impact than the earlier

20   marginal sentences that he's faced.  It's not much of an

21   argument, but it is an argument.

22       MS. ALTMAN:  Thank you.  As the Court already noted, he

23   did have the opportunity to go to sex offender treatment.  He

24   did not last long in that treatment due to his behavior.  The

25   idea that all of these other courts gave him lesser sentences I

1  don't believe carries much weight.  We have no indication what

2  all of those other courts knew about his background, about his

3  history, or anything like that.

4      And the final thing I would like to say is that addressing

5  this argument that Mr. Brixen isn't the worst of the worst, and

6  I don't know that we've ever seen --

7          THE COURT:  I don't think I want to rise to that.  That

8  jumped out at me as well and -- well, if you want to make a

9  comment on it, you may.

10         MS. ALTMAN:  All I would say, Your Honor, is I think it

11 would be hard to find someone who is much worse, someone who is

12 abusing --

13         THE COURT:  I was thinking about that too in response,

14 and the only thing I come up with is overt violence.  That's the

15 only thing lacking in the picture of this defendant, so in that

16 sense, I guess that's true, but it's not much of a statement.

17         MS. ALTMAN:  And that's all I have to say, Your Honor.

18         THE COURT:  Thank you very much.

19     Mr. Moyers, anything else that you'd like to add?

20         MR. MOYERS:  I'd planned to say a lot, but I think the

21 Court hit it right on the head with what the issues are in play

22 here.  I think what I would argue is just a point on retribution

23 first, which is it's -- every time anybody reads the presentence

24 reports or even Ms. Altman's sentencing memo, the facts in these

25 cases are always horrible, and they're always stomach churning,

1    and the reason we have a criminal justice system is because we

2    can't let this feeling of revenge and disgust propel everything,

3    and I'm not saying that that's what would be going on here, but

4    it is something that defense counsel is always trying to raise

5    as an issue for there's a human impulse to over-punish, and I

6    would just highlight that --

7            THE COURT:  And I don't know that it's punishment

8    that's driving the sentence here; it's the risk that the

9    defendant represents to society because he's done this

10   repeatedly despite being jailed and imprisoned, put through

11   programming, and there's no sign that he even appreciates the

12   gravity of the damage that he's doing each time he engages in

13   this conduct.

14       I'm not disgusted by the defendant.  I don't feel revulsion

15   for him.  I'm angry, if at all, with our lack of understanding

16   of the behavior and the causes of the behavior, particularly

17   when they start as young as they did with this defendant, but I

18   also have a responsibility to protect the public, which is part

19   of the factors I'm to consider, and that's where I'm just at a

20   loss as to what else can be done other than to incarcerate the

21   defendant for a long period of time.

22           MR. MOYERS:  And I think that's exactly right is that

23   he hasn't gotten a very long sentence yet, and he's going to get

24   one here today, and we don't know -- granted, it isn't the

25   strongest basis we could have for him to make changes, but he's

1    going to get that long sentence today, and I don't think we can

2    say -- we're just not at the level of certainty yet to say that

3    a sentence of 15 years will do what two years or five years

4    combined hasn't.

5        And so I guess I would also point out as a final point, Mr.

6    Brixen does have time left in his life.  Even if he were to get

7    the statutory maximum, he's still getting out with some life

8    left, and the point -- a message in the sentence should be that

9    change is possible for him, not that the system has just given

10   up and he can't be changed.

11       Now, I know Mr. Brixen had indicated he wants to read a

12   letter to the Court, if the Court would like to hear it now.

13           THE COURT:  This would be the appropriate time for him

14   to make any statement he cares to make.

15           THE DEFENDANT:  To the courts and judge, thank you for

16   this time.  First of all, I'd like to apologize and say sorry to

17   the two girls, Veronica --

18           MR. MOYERS:  Uh-uh.

19           THE DEFENDANT:  Okay.  -- to the victims I committed my

20   crimes against, also to their families for the mess I put them

21   in and for the hurt and pain I caused them and their families.

22   I hope and pray that they can put this horrible incident behind

23   them and put it in the past.  I hope over time the hurt and pain

24   grow smaller.

25       I know that I'm going to learn from these terrible mistakes

1     I made.  I'm going to do everything in my power to do treatment

2     and therapy, which I believe would help me out in my future to

3     better myself so I don't make these mistakes again.  I know

4     these mistakes are not who I am as a person.  I made bad choices

5     in life, but I'm going to learn from these bad choices and

6     become a better person for when I eventually get out to the

7     community and become a productive member of society.

8          To the victims' family and my family, I say again I'm very

9     sorry with all my heart and hope and pray you can forgive me for

10    my mistakes and bad choices I made that affected you all in your

11    lives.  I know I need and should be punished for breaking the

12    law criminally and morally and should do time in prison, and I

13    hope that the time I get, that the treatment and therapy can

14    help me become a better person.  I think I would like to be able

15    to get out and lead a better life that I know I can lead and be

16    around my family again.  Thank you.

17         THE COURT:  It's hard to know where to begin a

18    discussion about your statement or the crimes here because

19    "sorry" obviously just doesn't do it, and to say you hope they

20    can get this horrible incident behind them understates the

21    number of times, particularly as to KV No. 1, the first of the

22    two victims, the number of times that you abused her, and

23    obviously they're not here today, although there will be some

24    report provided to them, and I hope that a sentence today as

25    well as your acknowledgment of your need for treatment will be

1    of some value to their -- to both victims' recovery.

2         The difficulty is it's one thing to say that, you know,

3    you're open to treatment, but there's nothing in past history,

4    including past treatment, that suggests you've even taken that

5    seriously in the past, much less that it's had any impact.  Can

6    you help me understand as to why you continue to engage in this

7    conduct?

8         THE DEFENDANT:  I think it didn't work before -- when I

9    got the two years before, I was on a list to get treatment, but

10   I didn't have enough time because there was a waiting list, so I

11   didn't have enough time to get into treatment.

12        THE COURT:  You had follow-up opportunities for

13   treatment when you were released.

14        THE DEFENDANT:  Yeah.  I was in groups I think it was

15   like once a week -- yeah, I think it was like once a week, and

16   then I'd get revocated and have to go back for a little bit, so

17   I never got to finish that, but I was participating in that, and

18   the group leader actually said I was doing a good job.  I just

19   never was able to complete it because I was getting revocated

20   and going back.

21        THE COURT:  Well --

22        THE DEFENDANT:  But the time I got kicked out --

23        THE COURT:  That was going to be my next question.  Mr.

24   Moyers anticipated it.

25        THE DEFENDANT:  And then one of the times I got

1    revocated, they had me do a treatment program in prison, and it

2    was like a 10 or 11-week program, and I was, like, a third of

3    the way through, and somebody said that I was joking around

4    about a CO, which I wasn't.

5              THE COURT:  So the correctional officer made that up?

6              THE DEFENDANT:  From my understanding, it was

7    somebody -- another inmate that said that I said something about

8    another CO.

9              THE COURT:  Except that it was a specific CO, and she

10   certainly didn't come forward and say you didn't make those

11   comments.

12             THE DEFENDANT:  I never made those comments.  I was

13   doing good.  I was participating --

14             THE COURT:  Do you understand how it's difficult to say

15   you were "doing good" when you were repeatedly revoked for

16   having contact with minor children?  I mean, that was part of

17   the program that you were supposed to be following.

18             THE DEFENDANT:  I was doing good in the program --

19             THE COURT:  Instead, you continued to engage in that

20   conduct.

21             THE DEFENDANT:  Yeah.

22             THE COURT:  What doesn't come through is that you

23   really understand what you're doing to other people.

24             THE DEFENDANT:  Yeah, I understand that now.  Back then

25   I wasn't in the right mind frame.

1        THE COURT:  And that's what I'm asking:  With the

2    number of times people worked with you and tried to get you to

3    change direction, why did it not occur to you -- why were you

4    unable to appreciate the damage you were doing to young girls by

5    engaging in the behavior you did?

6        THE DEFENDANT:  To be honest, I felt that I didn't have

7    a problem.  I felt that I was okay and that I didn't need

8    somebody to tell me what to do in life.  You know, I was an

9    adult; I can do what I want, and I just -- just didn't care, you

10   know, which is sad to say, but, I mean, I'm just being honest.

11   And now, now that I've had some time, you know, I know I'm not a

12   bad person.  I just made some bad choices, and, you know, I got

13   to pay the consequences, and now that I'll actually have time to

14   actually do treatment and therapy, you know, and put all my

15   effort into that, I believe that I can be that, you know, good

16   member of society, you know?

17        THE COURT:  I hope that's how you approach your time in

18   prison.

19      I am prepared to render sentence.  The defendant is now 32

20   years of age, and he is before this court for his third hands-on

21   sex offense.  He appears to have had a difficult early

22   childhood, one of his siblings speculating, given that he was

23   removed from his biological mother by the age of 2, that some of

24   the impacts were irreversible.  I don't know that, and I hope

25   that's not true for this defendant.  What is true is that it was

1    determined his biological mother was incapable of caring for him

2    and his siblings, and he was placed in a foster home at

3    approximately the age of 2 where he was eventually adopted by

4    his foster parents when he was about 6 years of age.

5        The defendant described his foster family in positive

6    terms, indicating they provided for him with unconditional love

7    and support he needed.  Indeed, they adopted him and took

8    responsibility for him until the age of 14.  Presumably in

9    relation to his first sex offense, but perhaps more broadly

10   because he had become uncontrollable, they returned him to the

11   foster system at their expense.

12       The defendant's first sex offense occurred around 14 years

13   of age, the same age as one of the minor victims in the current

14   case.  The formal facts of that case are unknown, partially

15   because the defendant declined to allow the probation office to

16   examine those records, but his adopted brother indicated that it

17   involved the defendant coercing a younger foster child to

18   perform oral sex on him.

19       At the age of 19, the defendant was convicted for a

20   second -- his second sex offense for molesting a developmentally

21   disabled student while they were both on a school bus.  He

22   received a prison term for that offense and was released at the

23   age of 22.

24       Over the next four years, his extended supervision was

25   revoked four different times.  Many of his violations included

1    inappropriate contact and interactions with minor females.

2    Intermediate sanctions such as institution placements for sex

3    offender programming has resulted in no discernible improvement

4    in the defendant's behavior.  Indeed, he was discharged from

5    programming at Racine Correctional Institution after expressing

6    a desire to tie up a female correctional officer, although he

7    denies that occurred.

8        In addition, two maternal siblings and the defendant's

9    adopted brother were contacted for the presentence report, who

10   expressed frustration that the defendant has not taken advantage

11   of past programming provided to him as well as the general

12   belief that the defendant poses too great a danger not to

13   incarcerate him for as long as possible.  I'm not sure for any

14   sentence of the gravity of this one that we've been in a

15   situation where no one has stepped forward to speak on behalf of

16   the defendant or at least write a letter of support, and it is a

17   disturbing fact that that is true here.

18       As for the crime of conviction, the defendant arranged to

19   meet with a 14-year-old girl at a grocery store in Eau Claire,

20   Wisconsin.  Communicating with an undercover officer posing as

21   that 14-year-old, the defendant agreed to take the child

22   shopping for bras and panties.  Upon contact with investigators,

23   the defendant's phone was seized.  A subsequent review of his

24   phone revealed the defendant exchanged messages and images with

25   two minor females.  The text messages between these victims and

1    the defendant were graphic and sexual in nature.  The images

2    included naked pictures of both victims and the defendant.

3         As to Victim No. 2, fortunately, she never met with the

4    defendant, but Victim No. 1 did.  In fact, the defendant

5    traveled to Minnesota on four occasions to meet with her.  On

6    three occasions she performed oral sex on the defendant at a

7    local park.  In her statement to investigators, she described

8    her reluctance to do so but felt the defendant would become

9    angry if she refused.  On the fourth occasion, the defendant

10   picked the victim up and brought her to his trailer in northern

11   Wisconsin where he was living.  The defendant took a number of

12   pictures of himself and the victim engaged in sexual conduct

13   while at his residence, which he saved on his phone.

14        Given the defendant's crimes, he certainly fits the

15   sometimes overused description of a sexual predator, and he

16   continues to pose a significant danger to the community,

17   particularly to underage girls.  At the age of 32 and with

18   repeated interventions, no meaningful improvement has occurred,

19   and except for the fact that the defendant's longest previous

20   sentence was two years, which I am considering under Section

21   5K2.0, there are no mitigating factors to warrant a departure

22   from the guideline range.  To the contrary, the guidelines at

23   Section 4A1.3(b)(2) would prohibit a downward departure for a

24   repeat dangerous sex offender.

25        If anything, the defendant's history and characteristics

1    and the likelihood that he will commit additional offenses would

2    justify an upward departure but for the statutory maximum

3    sentence, which capped the guideline range.  Still, I do find

4    that for the reasons stated by the defense and the hope that

5    meaningful treatment may impact the defendant, that some

6    departure is appropriate.  This is now the defendant's third sex

7    offense conviction in addition to past violations of supervision

8    involving contact with minors.  He has had numerous

9    interventions that have produced no marked improvement in his

10   predatory behavior, and for that reason I nevertheless find a

11   substantial sentence that would incarcerate the defendant into

12   his late 50s is necessary to protect the community and achieve

13   the statutory purposes of Section 3553(a) and (b)(2) of Title

14   18.  Hopefully it will result in the defendant confronting the

15   behaviors that put him here before me today.

16        Taking into consideration the nature of the offense as well

17   as the defendant's personal history and characteristics, I am

18   persuaded that a custodial sentence of 25 years is reasonable

19   and no greater than necessary to hold the defendant accountable,

20   protect the community, provide the defendant the opportunity for

21   rehabilitative programs, and achieve parity with sentences of

22   similarly situated offenders.

23        As to Count 2 of the indictment, it is adjudged that the

24   defendant is committed to the custody of the Bureau of Prisons

25   for a term of 300 months.  I strongly recommend that the

1    defendant be placed in an appropriate facility capable of

2    completing a full mental health assessment and then providing

3    extensive sex offender treatment.  I also recommend that the

4    defendant be afforded prerelease placement in a residential

5    re-entry center with work release privileges.  For the reasons I

6    have already noted, the defendant's term of imprisonment is to

7    be followed by a lifetime term of supervised release.  In light

8    of the nature of the offense and the defendant's personal

9    history, I adopt Condition Nos. 1 through 4, 7, 8, 9, and 11

10   through 20 as proposed and justified in the presentence report.

11   I note that neither party raised any objections to those

12   conditions.

13        Further, the Sentencing Reform Act of 1984 makes clear that

14   the primary goals of supervised release are to assist

15   defendant's transition into the community after a term of

16   imprisonment and to provide for rehabilitation.  The imposed

17   conditions here are warranted based on the defendant's offense

18   of conviction involving both the production of child pornography

19   and stipulated conduct involving the possession of pornography.

20        Even more troubling is the defendant's longer term pattern

21   of communications with, grooming of, and sexual molestation of

22   minors.  Accordingly, monitoring IT equipment and his activities

23   generally will be crucial to ensuring the defendant does not

24   possess illegal materials or solicit images of minors, ensuring

25   the safety of minors, monitoring his travel and sex registration

1    requirements, and confirming his compliance with treatment.  The
2    financial monitoring condition is also appropriate because the
3    defendant may be required to contribute to treatment costs, and
4    it will allow the probation officer the ability to monitor the
5    defendant's purchases, particularly of computer-related
6    equipment and internet service providers.
7            There is some question, nevertheless, whether this court
8    should state each of the conditions verbatim on the record and
9    justify them individually, which I am happy to do, unless the
10   defense wishes to waive my doing so.
11           MR. MOYERS:  We would waive that reading today.
12           THE COURT:  I do adopt verbatim the conditions noted as
13   well as the individual justifications for those conditions along
14   with the explanation I believe is ample and already in the
15   record today.  If either the defendant or the supervising
16   probation officer believes any of these conditions imposed today
17   are no longer appropriate when the defendant is released from
18   confinement to begin his term of supervised release, either one
19   and preferably both jointly may petition the Court for review,
20   and I would certainly consider or the judge who was here at the
21   time will consider modifications as appropriate.  Hopefully by
22   that time neurology will catch up with our lack of understanding
23   of these crimes and the reasons for them and there will be some
24   better conditions that can address the defendant's ongoing
25   behaviors.

1       The instant offense is not drug related, and the defendant

2   has no history of drug use.  Therefore, the requirements for

3   drug testing set forth at Section 3583(d) of Title 18 is waived.

4       It is adjudged the defendant is to pay a $100 criminal

5   assessment penalty to the Clerk of Court for the Western

6   District of Wisconsin immediately following sentencing.

7       The defendant is to pay mandatory restitution to the U.S.

8   Clerk of Court for the Western District of Wisconsin, but at

9   this time neither of the victims have requested restitution.

10  Unless they request a hearing, we will leave it at that.

11      The defendant has a negative net worth and qualified for

12  court-appointed counsel.  Therefore, the $5,000 assessment under

13  the Justice for Victims of Trafficking Act of 2015 is waived, as

14  it appears he does not have the means to pay that assessment.

15      He also does not have the means to pay any further fine

16  under Section 5E1.2(c) without impairing his ability to support

17  himself upon release from custody.  However, a final order of

18  forfeiture of property already seized is granted under Section

19  2253(a) of Title 18.

20      The probation office is to notify local law enforcement

21  agencies and the state attorney general of the defendant's

22  release back to the community.

23      I believe the government has a motion with respect to the

24  remaining counts of the indictment.

25          MS. ALTMAN:  Yes, Your Honor.  I would move to dismiss

1    the remaining counts.

2            THE COURT:  And I do dismiss all remaining counts

3    against this defendant.

4        My final obligation, Mr. Brixen, is to advise you that you

5    have every right to file a notice of appeal, and you have very

6    capable counsel who can advise you of potential grounds to

7    appeal, but you only have 14 days to file it, so that's a

8    discussion you should have as soon as possible with your counsel

9    if you wish to do so.

10       This is a very long sentence, and it is because of the

11   nature of the conduct and because of sentences that have been

12   entered against many similarly situated and, frankly, because of

13   the substantial risk you pose to young girls in our community

14   until you get a better handle on your own predispositions and

15   apparent inability to really appreciate the damage you're

16   causing not just to either of these victims based on a single

17   horrible incident but based on that traveling with them for the

18   rest of their lives.

19       There's no evidence in the record that you yourself were

20   molested, and it's hard to understand how you fell as far as you

21   did and treated other people as objects.  As I said before, I

22   wish we had a better understanding of that.  I hope you will

23   spend the time, admittedly a long time, reflecting on why that

24   is and becoming the person you say you want to be.  I would

25   encourage you to be open to the treatment that you'll be

1    provided, to spend time with others who are truly trying to

2    change the focus of their lives and not with those who within

3    the federal system are marking time until they can go out and

4    victimize others.

5         If you do that and you start to develop other goals and

6    interests, you still could make a contribution to society and

7    perhaps even mend some of the fences with your family.  If you

8    don't, supervision is a serious process.  They will work with

9    you on your release.  The probation office's goal is to see you

10   succeed on release, but as you've seen in the past, they will

11   also hold you accountable and are required to report violations

12   to this court.

13        It's hard to know in these situations other than the

14   general information we have about sexual predators, who tend to

15   be fairly bright individuals with the ability to manipulate

16   others, particularly those who are vulnerable.  You have to get

17   beyond that to some sense of actual empathy, and if you do that,

18   there is hope for all of us, and you could be part of the

19   solution to what has probably always been a tremendous problem

20   but has surfaced in ways that it hadn't before because of the

21   internet.  Society could use people like that, and I hope you

22   are able to make a contribution in that area at the end of your

23   sentence, perhaps even during your sentence if you make the

24   right steps.

25        Anything more for the government?

1        MS. ALTMAN:  No, Your Honor.  Thank you.

2        THE COURT:  Anything more for the defense?

3        MR. MOYERS:  No, Your Honor.

4        THE COURT:  Thank you very much.

5        THE CLERK:  This Honorable Court is adjourned.

6     (Proceedings concluded at 1:53 p.m.)

7                        ***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit

2     Reporter in and for the State of Wisconsin, certify that the

3     foregoing is a true and accurate record of the proceedings held

4     on the 7th day of March, 2018, before the Honorable

5     William M. Conley, U.S. District Judge for the Western District

6     of Wisconsin, in my presence and reduced to writing in

7     accordance with my stenographic notes made at said time and

8     place.

9          Dated this 11th day of April, 2018.

10

11

12

13

14

15                              _____/s/ Jennifer L. Dobbratz_____

16                         Jennifer L. Dobbratz, RMR, CRR, CRC
                                  Federal Court Reporter
17

18

19

20

21

22

23

24     The foregoing certification of this transcript does not apply to
       any reproduction of the same by any means unless under the
25     direct control and/or direction of the certifying reporter.